# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**RICKEY J. SIMONEAUX**                                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 18-270-RLB[1]**

**COMMISSIONER OF SOCIAL SECURITY**

---

### RULING ON PLAINTIFF'S SOCIAL SECURITY APPEAL

---

Rickey J. Simoneaux (Plaintiff) seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-7), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner is **REVERSED** and this matter is **REMANDED** for further proceedings consistent with this Ruling.

## I.      PROCEDURAL HISTORY

Plaintiff filed his application for disability insurance benefits (Tr. 91-92, 258-261) on March 5, 2015, alleging that he became disabled on February 27, 2015 because of a disabling condition, namely heart attacks and liver damage. Plaintiff's application was initially denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 57-72)

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Docs. 9, 10), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

before issuing an unfavorable decision on May 13, 2016. (Tr. 93-108). Plaintiff's first request for review of the ALJ's decision (Tr. 171-174) was granted by the Appeals Council on September 12, 2016. (Tr. 109-112). A second administrative hearing was held on February 23, 2017 (Tr. 40-56), and the ALJ issued a subsequent unfavorable decision on June 9, 2017. (Tr. 40-56). Plaintiff filed a second request for review (Tr. 256-57) with the Appeals Council, which was denied on January 8, 2018. (Tr. 1-7). The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's second request for review. *See* 20 C.F.R. § 404.981.

## II.    STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the

evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g., Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III.    ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he or she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must

conclude the claimant is disabled if he or she proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he or she is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1.    Plaintiff had met the insured status requirements of the Social Security Act through June 30, 2020.

2.    Plaintiff had not engaged in substantial gainful activity since February 27, 2015.

3.    Plaintiff had the following severe impairment: status post-myocardial infarction.

4.    Plaintiff did not have an impairment or combination of impairments that meets or medically equals a Listing.

5.    Plaintiff retained the residual functional capacity to perform the full range of medium work.

6.    Plaintiff was unable to perform any past relevant work.

7.    Plaintiff was born on June 27, 1958 and was 56 years old on the alleged disability onset date.

8.    Plaintiff had a limited education and was able to communicate in English.

9.  Transferability of job skills was not material to the disability determination because the Medical-Vocational Rules directly support a finding of not disabled, whether or not Plaintiff has transferable job skills.

10. Considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.

11. Plaintiff was not under a disability from February 27, 2015 through the date of the ALJ's decision.

## IV.  DISCUSSION

The gravamen of Plaintiff's argument is that the ALJ failed to properly assess Plaintiff's residual functional capacity. Within that framework, Plaintiff makes three arguments. First, Plaintiff argues the ALJ failed to appropriately weigh the medical opinions. Second, Plaintiff argues the medium work RFC assessed by the ALJ was unsupported by substantial evidence. Lastly, Plaintiff argues the ALJ failed to address his non-exertional limitations.

The ALJ found that Plaintiff retained the residual functional capacity to perform the full range of medium work. (Tr. 28). In so finding, the ALJ first discussed the underlying legal framework of his RFC analysis, including that he had "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." (Tr. 28). From there, the ALJ discussed the Plaintiff's testimony at both of the administrative hearings before reviewing and summarizing the Plaintiff's medical records, including the objective medical records and opinions of Drs. Gboloo, Hawkins, Nowakowski, and Leong. (Tr. 28-33).

### A.  Weight Given to Medical Opinions

Plaintiff suggests the ALJ failed to follow 20 C.F.R. § 404.1527 when he allegedly rejected the opinions in arriving at his RFC finding of the following medical providers: (i) Dr. Gboloo, Plaintiff's primary care physician; (ii) Dr. Nowakowski, Plaintiff's pulmonologist; (iii) Dr. Hawkins, an examining physician; and (iv) Dr. Leong, a state agency medical consultant.

Plaintiff argues that the ALJ failed to comply with 20 C.F.R. § 404.1527 by not explaining why he did not adopt the opinions of the four physicians. (R. Doc. 15 at 4). In support of this argument, Plaintiff suggests that the medical opinions of record were consistent with each other in opining that Plaintiff cannot perform the lifting/carrying requirements of medium work and had additional non-exertional limitations. (R. Doc. 15 at 4). Plaintiff also argues that the ALJ erred in not deferring to vocational testimony for consideration of his non-exertional limitations, suggesting that every medical opinion found him to have non-exertional limitations. (R. Doc. 15 at 5). Plaintiff suggests that the ALJ was required to provide "good reasons" for the weight assigned to the four doctors' opinions under the requirements of 20 C.F.R. § 404.1527 and *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000), and that the ALJ's interpretation of the consistency of the opinions amongst each other and with the objective medical records was misplaced. (R. Doc. 15 at 9, 13).

The Commissioner responds that the ALJ is not required to give "good reasons" for the weight assigned to a medical opinion unless the ALJ declines to give any weight, noting that the ALJ gave "little" weight to the opinions. (R. Doc. 17 at 8). The Commissioner also avers that substantial evidence supports the ALJ's finding with regard to the RFC as well as the weight given to the medical opinions. (R. Doc. 17 at 9). In Reply, Plaintiff suggests that the ALJ impermissibly substituted his lay opinion for that of the Plaintiff's doctors. (R. Doc. 18 at 4).

"It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent with other substantial evidence in the case record." SSR 96-2p, 1996 WL 374188, at *2 (July 2, 2996).  Further, a failure to explicitly address the factors set forth in 20 C.F.R. § 404.1527(c) is not fatal to the ability of a Court to affirm an

ALJ's decision. Further, to the extent Plaintiff argues that the ALJ failed to discuss the factors set forth in *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000), an ALJ is "not required to go through all six" factors where the record contains medical evidence from other first-hand sources — examining or not. *Cain v. Barnhart*, 193 F. App'x 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458); *see also Qualls v. Astrue*, 339 F. App'x 461, 466-67 (5th Cir. 2009) ("The *Newton* court limited its holding to cases where the ALJ rejects the sole relevant medical opinion before it."); *King v. Comm'r of Soc. Sec. Admin*., 2014 WL 905207, at *4 (M.D. La. March 7, 2014) (*Newton* not applicable when ALJ is presented with competing first hand medical evidence); *Powers v. Comm'r of Soc. Sec. Admin*., 2014 WL 791867, at *7 (M.D. La. Feb.25, 2014) (same).

Drs. Gboloo and Nowakowski examined and treated Plaintiff over a period of time, while Dr. Hawkins examined and treated Plaintiff on at least one occasion, and Dr. Leong is Plaintiff's state agency medical consultant. According to the reasons provided by the ALJ for giving only little weight to each of them, all but Dr. Leong are first-hand sources whose medical opinions are inconsistent with the treatment records. (Tr. 32). Significantly, the ALJ found that '[t]hese objectively normal treatment findings greatly outweigh the contradictory opinions of various physicians in response to questions about the claimant's work-related functioning." (Tr. 32). As noted above, where there are multiple first-hand medical sources, and particularly where those sources are internally inconsistent, an ALJ is not required to conduct a detailed analysis of the *Newton* factors.

Furthermore, the ALJ provided several "good reasons" for the weight given to the medical providers. First, the ALJ noted that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927." (Tr. 28). Specific to Dr. Gboloo, and after

reviewing her treatment records and opinion, the ALJ opined that little weight was given because her opinions were "contradicted by both the claimant's own statements denying symptoms and the longitudinal treatments notes of Dr. Gboloo that indicate overall normal physical findings and little to no change in treatment plan," that her opinions were "inconsistent with the opinions of Dr. Karin Hawkins," and that "the majority of the objective medical evidence of record thereafter notes full strength and range of motion of all extremities, and shows that he can ambulate without limitation, and has no function restrictions." (Tr. 31). Specific to Dr. Hawkins, the ALJ gave little weight to her opinion regarding functional limitations "because she is not a treating source," her opinions were "contradicted by the claimant's own statements denying symptoms and overall normal physical exam findings and controlled conditions," and "that Dr. Hawkins's opinions are incompatible with those of Dr. Gboloo in terms of lifting, sit-stand option, and cardiac issues." (Tr. 31). The ALJ also noted a "lack of intensive treatment since 2015" and Plaintiff's "consistent denial of symptoms." (Tr. 31-32).

The ALJ then addressed the opinion of Dr. Nowakowski, giving it little weight because it was "flatly contradicted by the claimant's admitted lack of symptoms and doctor's own treatment notes documenting normal functioning." (Tr. 32). As to all three of these opinions, the ALJ explained the little weight given with reasons such as "[the opinions] simply cannot be squared with the objective medical record," "they were created in the context of the claimant's disability claim and are not intended to inform future treatment," they "delve into issues outside the expertise of the opinion sources," and they "do not relate closely to objective medical signs or laboratory findings." (Tr. 32). The ALJ also gave further consideration to the opinion of Dr. Leong, as per the instructions of the Appeals Council, but noted the record expanded beyond her opinion and "shows clearly that the claimant endorsed symptoms only very briefly (about three

days) in the throes of an acute myocardial infarction in the context of abuse of tobacco, cocaine, and alcohol; and thereafter, most frequently overall denied cardiac, pulmonary, respiratory, or musculoskeletal symptoms." (Tr. 33).

Contrary to the Plaintiff's assertions, the ALJ conducted a detailed analysis of the opinions in the record as well as the treatment notes of those and other providers, and repeatedly provided reasons for the weight assigned. A treating physician's opinions are not conclusive, and may be assigned little or no weight when good cause is shown. Under *Newton*, 209 F.3d at 455-56, good cause may permit the ALJ to discount the weight given to a treating physician's opinion where his evidence is conclusory, unsupported by medically acceptable clinical, laboratory or diagnostic techniques, or is otherwise unsupported by the evidence. These are exactly the reasons given by the ALJ herein, who assigned little weight to the opinions based primarily on their inconsistency with the objective medical records.

Dr. Gboloo reported that she treated Plaintiff every 2-3 months since May 20, 2015. (Tr. 623). In her April 4, 2016 Treating Source Statement, Dr. Gboloo opined that Plaintiff would be off task more than 25% of a typical workday, and would miss four or more days per month. (Tr. 623). Based on clinical findings of chronic right shoulder pain, shortness of breath with exertion, and fatigue with prolonged standing, she found that Plaintiff could never lift or carry 50 or more pounds, could rarely lift or carry 20 pounds, occasionally lift or carry 10 pounds, and frequently lift or carry less than 10 pounds, and could walk 5 hours, stand 6 hours, and sit 8 hours with a sit-stand option. (Tr. 624). She also assessed Plaintiff with limitations in the use of his right arm and hand due to weakness of right upper extremity with a strength of 4/5. (Tr. 625).

Dr. Gboloo's treatment records do not support the limitations imposed in her Treating Source Statement, however. The records indicate an initial visit with Dr. Gboloo on May 20,

2015, wherein Plaintiff complained of right shoulder pain and back pain. (Tr. 608). Plaintiff denied chest pain/pressure, orthopnea and palpitations, and noted arthralgias, but denied stiffness, swelling, and myalgias. (Tr. 608). Plaintiff's cardiovascular exam was noted to be normal, and significantly, examination of Plaintiff's right upper extremity, including inspection, palpation, range of movement, and stability, were noted to be normal. (Tr. 610). No further tests were ordered or treatment provided, and Plaintiff was advised to return in two months. (Tr. 611). Plaintiff returned almost three months later, on August 5, 2015, again complaining of shoulder pain, but reporting it only moderately limits activities and was alleviated by medication. (Tr. 603). The same was reported on November 5, 2015, and Dr. Gboloo again ordered no further tests or treatment, but for Plaintiff to return in two months. (Tr. 592-596).

Plaintiff continued to visit Dr. Gboloo with no records indicating further testing, treatment, therapy, or reports of chest pain, shoulder pain, or functional limitations significantly different from those noted above. (Tr. 587, 713, 718, 724). At the last visit with Dr. Gboloo in the record, on January 9, 2017, right shoulder pain was again noted, along with "pertinent findings" that Plaintiff "[d]enies limited range of motion and Denies parasthesias." (Tr. 724). He was again advised to return in two months. (Tr. 726). Further, there is no indication that Plaintiff complained of, reported, or was diagnosed with shortness of breath upon exertion at any visit with Dr. Gboloo, and indeed was noted to have denied dyspnea at each visit. (Tr. 587, 592, 597, 603, 608, 713, 718, 724).

The ALJ also gave little weight to Plaintiff's treating pulmonologist, Dr. Nowakowski, on the basis that he erred in stating the alleged onset date, and his opinion was contradicted by Plaintiff's "admitted lack of symptoms" and Dr. Nowakowski's own treatment notes

"documenting normal functioning." (Tr. 32).[2] In his January 30, 2017 Treating Source Statement, Dr. Nowakowski reports diagnoses of COPD, insomnia, dyspnea on exertion, and cough, suggesting that Plaintiff will be off-task more than 25% of a typical workday and "most probably cannot work in any day [eight hours]." (Tr. 681). Dr. Nowakowski's Treating Source Statement limits Plaintiff to never carrying or lifting 50 or more pounds, rarely carrying or lifting 20 pounds, and occasionally lifting or carrying 10 or less pounds, and the ability to sit 6 hours, stand 2 hours, and walk 1 hour in an eight hour work day. (Tr. 682).

Dr. Nowakowski's treatment records for Plaintiff indicate that he began seeing Plaintiff on March 1, 2016, noting complaints of cough, shortness of breath, fatigue, and coronary atherosclerosis. (Tr. 639). Upon examination, Dr. Nowakoski noted no cyanosis, chest pain, or rapid heart rate, no wheezing, chest tightness, pain with respiration, or difficulty breathing, with normal breath sounds and respiration rate, despite a dry cough, with unlabored respiration, normal chest wall expansion, and no dullness, flatness, or hyperresonance. (Tr. 641). Plaintiff was administered a pulmonary function test, which resulted in an impression of mild obstructive airway disease and a prescription for an inhaler. (Tr. 642). The records from Plaintiff's March 30, 2016 visit with Dr. Nowakowski indicate moderate obstructive airway disease, but the remaining records in April, May, July, and September of 2016 return to a diagnosis of mild obstructive airway disease and contain the same unremarkable respiratory and cardiovascular examination results. (Tr. 644, 649, 654, 667).

---

[2] The Court will not address the arguments regarding the conflicting reports of alleged onset date. Plaintiff alleges an onset date in March 2015, while Dr. Nowakowski reports in his Treating Source Statement that he has treated Plaintiff since March 2016, and to the best of his knowledge, Plaintiff's symptoms and limitations first appeared in March 2016. (Tr. 681). The Court interprets the disconnect to be merely clerical error, or a recognition that Dr. Nowakowski's knowledge of Plaintiff's limitations originated in March 2016.

Dr. Nowakowski reports that the medical or clinical findings that support his assessed limitations are a "heart condition, 3 stents in, blockage still persi[sts]," but there is no indication in his records or any other treatment records that Plaintiff's blockage was not alleviated by the placement of the stents. (Tr. 682). Further, despite being Plaintiff's pulmonologist and there being no treatment records reflecting Plaintiff's shoulder pain, Dr. Nowakowski assesses limitations in Plaintiff's use of both hands, attributing this to "loss muscle [and] weight loss." (Tr. 683). The ALJ notes that part of the reason he found the opinions to be less persuasive was because they "also delve into issues outside the expertise of the opinion sources." (Tr. 32). Based on the Court's review of Dr. Nowakowski's Treating Source Statement coupled with his objective medical records, substantial evidence supports the ALJ's finding that his opinion was entitled to little weight based on a lack of evidentiary support for that opinion in his own medical records.

Though not a treating physician, the ALJ also gave little weight to the opinion of Dr. Hawkins, an examining physician. (Tr. 31). Dr. Hawkins indicated that, at the time of her March 22, 2016 Treating Source Statement, she had seen Plaintiff once on December 28, 2015, but that he was under her care. (Tr. 628). She noted diagnoses of coronary artery disease, and mild ischemic cardiomyopathy, and reported that Plaintiff would be off-task 5% of a typical work day and would be absent one day a month. (Tr. 628). She also indicated that Plaintiff could lift and carry 50 pounds rarely, 20 pounds frequently, and ten or less pounds continuously, sit and stand for 8 hours, and walk for 7 hours in an 8-hour workday. (Tr. 629).

There are no treatment records available from the December 28, 2015 appointment Plaintiff had with Dr. Hawkins, nor are there any other treatment records from December 2015 through the ALJ's June 14, 2017 opinion, despite her report that Plaintiff was under her care. (Tr.

628). The ALJ gave the opinion of Dr. Hawkins little weight on this basis, as well as his finding that her opinions were contradicted by Plaintiff's own statements, and the incompatibility of her opinion with that of Dr. Gboloo. (Tr. 31-32). Substantial evidence supports this finding by the ALJ, and the Court notes a lack of evidence to the contrary.

Dr. Leong, on the other hand, is a state agency medical consultant. Plaintiff suggests that the ALJ failed to assign a weight to her opinion "and did not acknowledge at all that this source is considered [and] deemed an expert in both disability evaluation and in the Social Security disability programs in particular." (R. Doc. 15 at 10). 20 C.F.R. § 404.1513a(b)(1) provides that an ALJ is "not required to adopt any prior administrative medical findings, but . . . our Federal or State agency medical or psychological consultants are highly qualified and experts in Social Security disability evaluation."

An ALJ is not required to indicate what weight, if any, is given to a medical opinion where the ALJ has sufficient good cause to reject it entirely. *See, e.g., Espinoza v. Colvin*, 2016 WL 6916946, at *4 (W.D. Tex. Nov. 17, 2016) ("Plaintiff's contention that the ALJ improperly failed to indicate what weight, if any, he gave to Dr. Guzman's opinion is without merit, inasmuch as the ALJ had sufficient good cause to reject it entirely.").

Dr. Leong's opinion is dated May 29, 2015, less than three months after Plaintiff's alleged onset date resulting from a cardiac event, and more than two years before the ALJ's decision. Furthermore, outside of the hospital records directly related to the cardiac event in March 2015 and May 2015, the entirety of the medical evidence are treatment records that post-date Dr. Leong's opinion. Therefore, Dr. Leong's opinion is based entirely on a few months worth of evidence stemming from an unexpected cardiac event, and two additional year's worth

of evidence upon which the ALJ based his decision in part was unavailable to her at the time. (Tr. 76, 79).

In its first review, the Appeals Council found that the ALJ did not adequately address Dr. Leong's opinion, specifically noting that the ALJ referenced Dr. Leong's opinion but did not "resolve other inconsistencies between Dr. Leong's opinion and the assessed residual functional capacity," such as why corresponding exertional and manipulative limitations were not included. (Tr. 110). The Appeals Council directed the ALJ to give further consideration to Plaintiff's maximum RFC and to provide specific references to evidence of record, along with further consideration to Dr. Leong's opinion in accordance with 20 C.F.R. §§ 404.1527 and 416.927 and SSR 96-6p. (Tr. 111).

The ALJ noted the direction of the Appeals Council in discussing Dr. Leong's opinion. (Tr. 32). The ALJ then explained that the "updated medical evidence" and "the expanded record shows clearly" that Plaintiff "endorsed symptoms only very briefly (about three days) in the throes of an acute myocardial infarction in the context of abuse of tobacco, cocaine, and alcohol, and thereafter, most frequently overall denied cardiac, pulmonary, respiratory, or musculoskeletal symptoms." (Tr. 33). The ALJ also noted that Plaintiff's hypertension was not severe in the absence of any functional limitations, which finding is supported by the record reflecting no limitations attributable to hypertension. The ALJ also acknowledged Plaintiff's reports of shoulder pain, the impetus for Dr. Leong's assessed limitations with lift/carry and reaching. (Tr. 33, 77, 78). The ALJ then discounts this finding by noting that Plaintiff admitted his shoulder pain did not limit his activities, and does not meet the durational requirement. (Tr. 33).

Substantial evidence supports the ALJ's findings with regard to Dr. Leong's opinion. At a November 10, 2015 follow up appointment, Plaintiff reported being able to work at painting jobs without limitations, though still noted shoulder pain. (Tr. 572). Dr. Gboloo frequently recorded complaints of shoulder pain, but also noted that the pain was alleviated by medication. (Tr. 592, 603). Additionally, the Court notes that Dr. Gboloo appears to have never prescribed any medication, treatment, or further testing as it pertains to Plaintiff's shoulder pain, which one would expect with an impairment that results in functional limitations. Dr. David Gboloo also noted Plaintiff's report of shoulder pain, but that the "complaint does not limit activities" at an August 29, 2016 visit. (Tr. 699). Overall, the medical records that post-date Dr. Leong's opinion do not provide longitudinal support for the limitations she found such that substantial evidence supports the ALJ's decision in that regard.

Based on the Court's review of the record, substantial evidence supports the ALJ's analysis of the opinions of Drs. Gboloo, Nowakowski, Hawkins, and Leong, as it relates to the inconsistencies noted supporting a determination to give these opinions less weight.

### B.     RFC of Full Range of Medium Work

Although substantial evidence supports the ALJ's decision to give less weight to the medical opinions, the Court must also address whether substantial evidence supports the ALJ's finding that Plaintiff retained the residual functional capacity to perform medium work. Plaintiff argues that every medical opinion in the record concluded that Plaintiff could "*at most* perform light work." (R. Doc. 15 at 5) (emphasis in original). Here, the ALJ assessed an RFC including the full range of medium work without any non-exertional limitations. (Tr. 28). In support of his RFC, the ALJ discussed the medical opinions, to which he gave little weight, the treatment

records, and Plaintiff's testimony. (Tr. 28-33). In concluding his RFC assessment, the ALJ stated the following:

> The residual functional capacity of medium exertional level work herein is supported by the medical evidence of record. Some limitation is warranted in view of his status post myocardial infarction, but the objective medical evidence from less than a year after his heart attack, and continuing, shows that he has returned to and retained full strength and range of motion of all extremities, can ambulate without limitation, and has no functional restrictions.

(Tr. 33). Here, the ALJ noted that the objective medical records post-dating Plaintiff's heart attack showed a return to full strength and range of motion of all extremities, the ability to ambulate without limitation, and no functional restrictions, yet reduced Plaintiff's RFC to medium work based on Plaintiff's "status post myocardial infarction." (Tr. 33). At the same time, the ALJ noted the Plaintiff's testimony regarding back and shoulder pain, problems reaching overhead, and his ability to lift only 15 to 20 pounds with his right arm, yet increased Plaintiff's RFC from the limitations imposed in the Treating Source Statements. (Tr. 28-29).

"[W]hen the ALJ rejects the only medical opinions of record, interprets the raw medical data, and imposes a different RFC, the ALJ has committed reversible error." *Garcia v. Berryhill*, 2018 WL 1513688, at *2 (Mar. 27, 2018) (citing *Williams v. Astrue*, 355 Fed. App'x 828, 831 (5th Cir. 2009). *Also see Raper v. Colvin*, 262 F. Supp. 3d 415, 422-23 (N.D. Tex. Feb. 17, 2017) (collecting cases holding an ALJ is not permitted to reject all medical opinions and then independently assess a claimant's RFC without medical evidence addressing the effects of a claimant's impairments on his ability to work).

The ALJ cites to no evidence in the record supporting an RFC of medium work, but rather appears to reduce Plaintiff's RFC to medium work based on his own balancing of the medical evidence showing no limitations, and the Plaintiff's testimony suggesting he can lift only 15 to 20 pounds. Having given little weight to the opinions of the physicians, substantial

evidence for the medium work RFC assessed by the ALJ must come from Plaintiff's testimony, the treatment records or both. The ALJ concluded that Plaintiff's testimony was "not entirely consistent with the medical evidence and other evidence in the record" such that "these statements have been found to affect the claimant's ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." (Tr. 33). Thus, substantial evidence for the ALJ's medium work RFC must come from the objective medical evidence.

At a follow up appointment on May 19, 2015 with Dr. Ravipati stemming from his March 1, 2015 heart attack, Plaintiff reported that he was able to walk without limitations, but noted some upper back and shoulder pain on his right side. (Tr. 560). He was negative for dyspnea on exertion and shortness of breath. (Tr. 561). The treatment plan from that visit noted "no limits to functional capacity" despite the reported shoulder pain. (Tr. 562). Plaintiff was seen again by Dr. Ravipati six months later, on November 10, 2015. Those notes report shoulder pain, but indicate that Plaintiff stated he was able to work at painting jobs without limitations, and he was again negative for dyspnea on exertion and shortness of breath. (Tr. 572). Plaintiff was overall noted to be "doing well" and advised to return in 6 months. (Tr. 573).

Dr. Gboloo's treatment records repeatedly memorialize reports of pain in Plaintiff's right shoulder, with corresponding reports of some limitations of activities. (Tr. 587, 592, 603, 608, 699, 713, 718, 724). Both Dr. Gboloo and Dr. Nowakowski, in their Treating Source Statements, limit Plaintiff to never carrying/lifting 50+ pounds, rarely carrying/lifting 20 pounds, and occasionally carrying/lifting 10 pounds. (Tr. 634, 682).

The only medical records potentially supporting the medium RFC found by the ALJ are those of Dr. Gboloo. "Medium work," as defined by the administration, "involves lifting no more

than 50 pounds at a time with frequent lifting or carrying of objects weighting up to 25 pounds." 20 C.F.R. § 404.1567(c). The Treating Source Statements, given little weight by the ALJ, would suggest an RFC of less than medium work as they assess Plaintiff with never being able to lift 50+ pounds, and a medium work RFC contemplates the ability to lift up to 50 pounds.

Further, the lift/carry limitations of a medium RFC are not explicitly present in the records, and the ALJ provides no discussion of whether he relied on those records to come to his RFC finding, and if so, how he made the connection between the information in Dr. Gboloo's medical records and the lift/carry restrictions of a medium RFC. Based on those facts, the Court cannot assess whether substantial evidence supports the medium work RFC assessed by the ALJ without committing the same analytical errors as the ALJ.

While Dr. Gboloo's records consistently note reports by Plaintiff of pain in his right shoulder and resulting limitations with activities, there is no assessment in Dr. Gboloo's records of Plaintiff's ability to lift/carry any specific weights. The only assessments of Plaintiff's specific lift/carry limitations are found in the Treating Source Statements, which the ALJ gave little weight. Thus, the only explanation for the ALJ's exertional reduction is his own opinion of Plaintiff's exertional limitations. The ALJ may evaluate conflicting opinions, but not simply substitute his own.

In *Waldo v. Astrue*, 2012 WL 2050432, at *4 (N.D. Miss. June 6, 2012), the court remanded the case for "a proper analysis of the plaintiff's vocationally-relevant functional limitations," where it found that the ALJ "reached an RFC based upon his own extrapolation of the medical records as to plaintiff's ability to work." *See also Meaders v. Colvin*, 2014 WL 3756355, at *4 (N.D. Miss. July 30, 2014) (remanding for improper RFC where court "cannot locate evidence that any treating or examining physician ever stated plaintiff was capable of

lifting twenty pounds occasionally or standing/walking for four hours and one hour without interruption.").

In *Thornhill v. Colvin*, 2015 WL 232844 (N.D. Tex. Jan. 16, 2015), the ALJ "rejected any medical opinion addressing or touching on Plaintiff's condition's effect on her ability to work and relied on progress notes that do not themselves address Plaintiff's work limitations." *Thornhill*, 2015 WL 232844 at *10. The *Thornhill* court opined that "the Commissioner cannot explain what 'mild symptoms' means in the context of Thornhill's ability to respond to increases in mental demands or changes in environment," in the same way that the Commissioner cannot here explain what Dr. Gboloo's recordation of shoulder pain and resulting limitations means in the context of Plaintiff's ability to lift/carry. *Thornhill*, 2015 WL 232844 at *10. The *Thornhill* court then addressed whether the claimant was prejudiced by the error, concluding that "[p]rejudice is demonstrated where the ALJ could have obtained evidence that might have changed the result."

The same remedy is warranted here. The ALJ's RFC of medium work is not supported by substantial evidence in the record, especially when considering the discounted weight given to the Treating Source Statements. This case will be remanded for further consideration of Plaintiff's RFC. Because the ALJ gave little weight to the medical opinions, and the treatment records do little to establish functional limitations, particularly the Plaintiff's lift/carry abilities, the Court expressly notes the option for the ALJ to obtain a consultative examination with the benefit of all of the relevant medical records and/or testimony of a vocational expert (see below) in order to make an informed decision and fully and fairly develop the record. *See, e.g., Vail v. Astrue*, 2009 WL 4877121, at *5 (S.D. Tex. Dec. 11, 2009) ("The ALJ has a duty to fully and fairly develop the record… and the Fifth Circuit has held that '[i]t is reversible error for an ALJ

not to order a consultative examination when such an evaluation is necessary for him to make an informed decision.").

### C. Non-Exertional Limitations

Lastly, Plaintiff also argues that the ALJ failed to take into account his non-exertional limitations, which would have required the testimony of a vocational expert. (R. Doc. 15 at 5-6). The ALJ noted that Plaintiff's chronic obstructive pulmonary disease (COPD) was a medically determinable impairment, but concluded it was non-severe, findings not challenged by Plaintiff. (Tr. 27). In his RFC assessment, the ALJ acknowledged Plaintiff's testimony regarding a diagnosis of COPD, and reports of shortness of breath, an ability to walk for just 15-20 minutes, or 30 minutes with an inhaler. (Tr. 28-29). The ALJ then summarizes the medical records and treating source statements, ultimately giving some persuasive weight to the treatment notes "because they are internally consistent, consistent with the lack of material follow-up treatment, and consistent with the claimant's own denials of symptoms." (Tr. 32).

It is unclear from the ALJ's decision what records he relied upon in coming to the foregoing conclusion as it applies to non-exertional limitations, but the Court's review of the record, particularly Plaintiff's pulmonologist, raises questions as to whether substantial evidence supports the ALJ's RFC insofar as he did not incorporate any non-exertional limitations. The Administration defines non-exertional limitations as "the demands of jobs other than the strength demands," and provides examples such as "difficulty performing some physical feature(s) of certain work settings, e.g., you cannot tolerate dust or fumes," or "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. § 404.1569a(c)(1), (c)(1)(v), and (c)(1)(vi).

As the Plaintiff notes, the treating source statements assess non-exertional limitations. Dr. Gboloo's Treating Source Statements limits Plaintiff's ability to use his hands (manipulate) due to weakness of right upper extremity, his postural abilities due to shortness of breath on exertion, as well as environmental limitations such as dust/odors/fumes/pulmonary irritants, vibrations, humidity and wetness. (Tr. 624-26). Dr. Nowakowski also assesses manipulative limitations, postural limitations, and significant environmental limitations. (Tr. 683-84). In his treatment records, Dr. Nowakowski consistently notes cough, shortness of breath, and fatigue, along with diagnoses of mild to moderate COPD following pulmonary function tests. (Tr. 642, 644, 646, 649, 654, 656, 657, 662, 664, 667, 669, 672, 673).

"An ALJ must take into account all medically determinable impairments in its RFC analysis." *Harris v. Comm'r of Soc. Sec. Admin.*, 2017 WL 3480154, at *5 (E.D. Tex. Aug. 14, 2017) (citing 20 C.F.R. §§ 404.1545(a)(2), 404.1645(e)). The ALJ concluded that Plaintiff's COPD was a medically determinable impairment. (Tr. 27). Despite this finding, the ALJ discusses Dr. Nowakowski/s Treating Source Statement, giving it little weight, but makes no mention of Dr. Nowakowski's treatment notes. The ALJ's RFC does not include any limitations attributable to Plaintiff's COPD. The lack of discussion by the ALJ makes it impossible for the Court to assess whether the ALJ improperly failed to consider the issue at all, or whether the ALJ considered and dismissed non-exertional limitations without any discussion.

Accordingly, on remand, the ALJ must also explicitly address the existence of any potential non-exertional limitations in his RFC assessment. Further, the Court notes specifically that, where a claimant suffers from non-exertional impairments, "the Commissioner must rely on a vocational expert to establish that such jobs exist in the economy." *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

## V.    CONCLUSION

For the reasons given above, **IT IS ORDERED** that the Commissioner's decision is

**REVERSED** and this matter is **REMANDED** for further proceedings consistent with this

Ruling.

Signed in Baton Rouge, Louisiana, on May 28, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**